FILED

2006 Oct-10  PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

TOMMY KING,

     Plaintiff,

vs.                        CASE NO. CV-06-J-83-NW

BELLSOUTH,

     Defendant.

## MEMORANDUM OPINION

Currently pending before the court are the defendant's motion for summary judgment, brief and evidence in support of said motion (doc. 12), the plaintiff's response (doc. 13), and the defendant's reply (doc. 15). The court has reviewed the motion, the briefs in support of and in opposition to the motion and the evidentiary submissions of the parties.

## I.  Procedural History

Plaintiff commenced this action by filing a complaint in the Circuit Court of Colbert County, Alabama. The defendant filed a notice of removal (doc. 1) pursuant to 28 U.S.C. § 1331. The plaintiff asserts that the defendant violated his rights under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.[1]  The plaintiff

---

[1] The plaintiff concedes that this claim is due to be dismissed.

alleges that he either had a disability, or was "perceived" as a person with a disability, as that term is defined by the ADA, and that the defendant terminated his employment due to this disability.  Complaint, ¶¶ 21, 23.

## II.  Factual Background

In their proposed Pretrial Order, the parties submitted the following "Agreed Summary" regarding the facts of this case:

> Plaintiff Tommy King filed this action against defendant, his former employer, on December 29, 2005, in the Circuit Court of Colbert County, Alabama.  Defendant BellSouth Telecommunications, Inc., removed this case to this Honorable Court on January 12, 2006.  Prior to filing a Complaint, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination based upon age and disability.  Plaintiff's Charge of Discrimination was filed June 6, 2005, and alleged that plaintiff was discriminated against because of his age and disability.... On September 12, 2005, the EEOC issued a dismissal and Notice of Rights.  Plaintiff has conceded that summary judgment is due to be granted on the claim of discrimination in violation of the Age Discrimination in Employment Act.  Defendant filed an Answer to plaintiff's Complaint on January 19, 2006, denying any wrongful discriminatory conduct.  For the last eighteen (18) years of his employment with defendant BellSouth Telecommunications, Inc., Tommy King served as a service technician.  Climbing is an essential function of a Service Technician job ...  Mr. Jimmy Grimes, the Supervisor of plaintiff had the authority to assign bucket trucks allocated to his work group.  Due to a partial loss of strength, coordination and pain in both arms, plaintiff Tommy King had medical restrictions that prevented him from climbing.  Plaintiff requested an accommodation of a bucket truck, which request was denied.  On January 28, 2005, plaintiff was notified that he was deemed to have the permanent medical restriction of no climbing.  Plaintiff was placed on Permanent Medical Restriction status, and on or about February 24,

2005, entered the partnership job bank for a seven (7) month period, exiting the job bank on October 15, 2005, with a service pension. The following facts are also relevant and not disputed:

Climbing is an essential job function for a service technician.  Declaration of Grimes, ¶ 25; plaintiff depo. at 26.  Plaintiff's supervisor, Jimmy Grimes, has three bucket trucks available for the ten service technicians he supervises.  Declaration of Grimes, ¶¶ 7-8.  Even with a bucket truck, a service technician still has to climb because some telephone cables are not accessible from a bucket truck.  *Id*., ¶ 16; plaintiff depo. at 47-49.

Between October 1998 and January 2005 the plaintiff was repeatedly placed on light duty due to restrictions from various medical problems.  Declaration of Grimes, ¶ 23; plaintiff depo. at 26-34.  During the times of these restrictions, the plaintiff's coworkers periodically had to complete work assigned to the plaintiff, necessitating additional trips to a customer's location which otherwise could have been completed in a single visit. Declaration of Grimes, ¶ 24; plaintiff depo. at 29-31. Because of the plaintiff's ongoing restrictions, Grimes' supervisor instructed him to call defendant's Fitness for Duty Administrator, because their department could not permanently accommodate someone limited to light duty.  Declaration of Grimes, ¶ 30-31.  The plaintiff was asked to take a physical examination to determine which job

3

aspects he could perform, but never had the examination.[2]  Plaintiff depo. at 35-36,

38-39.  The plaintiff was therefore placed in "Permanently Medically Restricted

(PMR)" status under the Collective Bargaining Agreement.  Declaration of Grimes,

¶¶ 33-36; declaration of Pamela Horn, ¶¶ 32-33; plaintiff depo. at 43-44.

Because of his PMR status and because all service technician jobs require

climbing, the plaintiff elected to enter the defendant's job bank.  Declaration of

Grimes, ¶ 38; declaration of Terrance L. Olive, ¶¶ 9-10. Based on his PMR status, the

defendant conducted a meeting for the purpose of explaining to the plaintiff his

various options to continue employment with defendant.  Plaintiff depo. at 49-50.

The plaintiff received a packet of information prior to this meeting.  Plaintiff depo.

at 49-50.   He then elected to go into the job bank for eight months and receive 47

weeks of termination pay, which was approximately $47,000.00.  Plaintiff depo. at

51-52; Declaration of Grimes, ¶ 38.   He thereafter went to "retirement" status.

Plaintiff depo. at 53.   Since his termination, the plaintiff has been receiving a

retirement pension from BellSouth.  Plaintiff depo. 66.  He also drew unemployment

compensation for six months.  Plaintiff depo. at 68.  Additionally, the plaintiff applied

---

[2]Plaintiff asserts his heart doctor did sign a release for him to take this examination.
Plaintiff depo. at 39-40.  The defendant asserts it never received the release. See e.g., declaration
of Pamela Horn, ¶¶ 26-31, 34-37.  The release plaintiff attached to his affidavit is signed by his
cardiologist, but neither the "Yes" nor "No" box, addressing whether the plaintiff is released for
the examination, was checked.  Exhibit A to plaintiff's affidavit.  The defendant asserts the
plaintiff never provided this statement to the appropriate department.

for Social Security Disability benefits in February 2006, but was not approved for the same.  Plaintiff depo. at 70.  The plaintiff testified that he believes he is disabled from working, but does seek reinstatement to a job at BellSouth.  Plaintiff depo. at 71-72.

The plaintiff asserts that he was not presented with an option to apply for vacancies within the company, that he did apply for the position of service technician in spite of his restrictions, that he did not apply for any other positions because there were no openings, and that he did not remember receiving the list of job vacancies in his information packet.  Plaintiff depo. at 53-56, 59.  However, on February 28, 2005, the plaintiff signed a document indicating that he wanted to take termination pay through the job bank.  Plaintiff depo. at 60-62.  The plaintiff also noted that he wished to be considered for various positions, should they come available.  Plaintiff depo. at 62-63.  The plaintiff agrees one of these positions did have an opening, but he did not apply for it.  Plaintiff depo. at 63.  *See also* declaration of Terrance L. Olive, ¶¶ 9-18.

The plaintiff testified that his arms are the basis for his claim of disability because he has trouble with them at times.  Plaintiff depo. at 81-82.  His sole basis for his claim under the Americans with Disabilities Act is the failure of defendant to provide him with a bucket truck.  Plaintiff depo. at 83.

### III.  Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,*  477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e).  In meeting this burden the nonmoving party "must do more

6

than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## IV. Discussion

The ADA provides that no covered employer shall discriminate against a "qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines disability as:

7

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (B) a record of such an impairment or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996).

In order to establish a prima facie case of disability discrimination, plaintiff must establish that he (1) has a disability; (2) he is a qualified individual "which is to say, able to perform the essential functions of the employment position that he holds .. with or without reasonable accommodations; and (3) was subjected to unlawful discrimination because of h[is] disability. *Lowe v. Alabama Power Co.*, 244 F.3d 1305,1307 (11th Cir.2001); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000); *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000); citing *Hillburn v. Murata Electronics North America, Inc*., 181 F.3d 1220, 1226 (11th Cir.1999); *See also Gordon v. E.L. Hamm & Assocs., Inc*., 100 F.3d 907, 910 (11th Cir.1996).

The defendant argues that the plaintiff is unable to establish that he has a disability because he cannot demonstrate that he is "substantially limited" from one or more major life activities.  Defendant's memorandum, at 14.  Here, the plaintiff claims that he is limited in the major life activity of "no climbing poles but ladder

work only."[3]   Plaintiff's response, at 4.   While "climbing poles is not a major life activity," working is.   When individuals claim that they are substantially limited in the major life activity of "working," their condition

> must significantly restrict [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." *Pritchard*, 92 F.3d at 1133 (internal quotations and citations omitted). "An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs. Nor does the inability to perform a single, particular job ⋯ constitute a substantial limitation in the major life activity of working." *Pritchard,* 92 F.3d at 1133 (internal quotations and citations omitted).

*Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285 (11th Cir.1997).   See also *Gordon v. E.L. Hamm & Associates,* 100 F.3d 907, 913 (11th Cir.1996); *Standard v. A.B.E.L. Services*, 161 F.3d 1318, 1327 (11th Cir.1998).

In the facts before this court, the defendant made other positions which did not include climbing available to the plaintiff.   The plaintiff failed to take advantage of those opportunities, opting instead to terminate his employment, receive the remainder of his termination benefits, and then collect retirement.    The only accommodation the plaintiff requested was a bucket truck.   However, the plaintiff agrees that climbing was an essential job function, that he could not climb and that

---

[3]The plaintiff also claims limitations from "major life activities such as cutting grass, sleeping, holding cups and drinks in his left hand, handwriting, climbing poles, and lifting heavy bulky items such as trash cans."  Plaintiff response, at 8.

a bucket truck at his disposal would not completely eliminate the need for climbing.

Under the ADA, the term "reasonable accommodation" may include, *inter alia*, job

restructuring,  and reassignment to a vacant position. 42 U.S.C. § 12111(9)(B).

However,

> [t]he use of the word "reasonable" as an adjective for the word
> "accommodate" connotes that an employer is not required to
> accommodate an employee in any manner in which that employee
> desires. *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 947 (N.D.Ga.1995). This
> is so because the word "reasonable" would be rendered superfluous in
> the ADA if employers were required in every instance to provide
> employees "the maximum accommodation or every conceivable
> accommodation possible." *Lewis,* 908 F.Supp. at 947; *see also Vande
> Zande v. State of Wis. Dept. of Admin.,* 851 F.Supp. 353, 360
> (W.D.Wis.1994) ("an employee is entitled only to a reasonable
> accommodation and not to [a] preferred accommodation"), *aff'd,* 44 F.3d
> 538 (7th Cir.1995). Stated plainly, under the ADA a qualified individual
> with a disability is "not entitled to the accommodation of her choice, but
> only to a reasonable accommodation." *Lewis,* 908 F.Supp. at 948.

*Stewart,* 117 F.3d at 1285-1286.

Having considered the foregoing, the court is of the opinion that the plaintiff

does not suffer from a "disability" as that term is defined by the ADA, and hence was

not entitled to its protections at the time he opted to be terminated from the

defendant's employ.  Even if the court could find that the plaintiff suffered from a

disability, the court would still find that the plaintiff was not entitled to the protection

of the ADA because he was not a  "qualified individual," as that term is defined by

the ADA because he has failed to produce any evidence that he was able to perform the essential functions of his job, with or without accommodation.

The parties do not dispute that the plaintiff was restricted from climbing. The parties do not dispute that climbing was an essential job function. Because the plaintiff could not perform an essential function of his job, namely climbing, with or without accommodation, he cannot be "otherwise qualified" for his job. *See* 42 U.S.C. § 12111(8) ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"); *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir.2000).

Because the court concludes that the plaintiff cannot prevail on the first or second prongs of his prima facie case, the court does not reach the third prong of that analysis.

## IV.  Conclusion

Having considered the foregoing, and being of the opinion that there is no genuine issue of any material fact and that the the defendant is entitled to judgment in its favor as a matter of law on the plaintiff's ADA claim, the court shall grant the defendant's motion for summary judgment by separate Order.  Additionally, the

plaintiff having conceded that his ADEA claim is due to be dismissed, the court shall

dismiss this claim with prejudice, by separate Order.

      **DONE** this the 10th day of October, 2006.


_____

      INGE PRYTZ JOHNSON

      U.S. DISTRICT JUDGE